IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS
ON THE COURT'S DOCKET
TAWANA C. MARSHALL, CLERK

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| RICHARD D. MORGAN, | § | CASE NO. 05-34981-SGJ-7 |
| DEBTOR. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF 8400 N.W. EXPRESSWAY, LLC ON OBJECTION TO ITS PROOF OF CLAIM

CAME ON FOR CONSIDERATION by this court the Motion for Summary Judgment filed by 8400 N.W. Expressway, L.L.C. ("Claimant" or "8400 Expressway"), requesting that summary judgment be granted dismissing (for lack of standing) or, alternatively, overruling the Debtor's Objection to Proof of Claim #3 Filed by 8400 N.W. Expressway, LLC [doc. no. 59] and the Debtor's Supplement to Objection to Proof of Claim No. 3 [doc. no. 60]. Claimant argues two bases for summary judgment: (a) Richard Morgan, as a Chapter 7 debtor, does not have standing to pursue a claim objection in his case; and (b) the Debtor's claim objection is barred by the doctrines of *res judicata* and *Rooker-Feldman*, since Claimant's claim is based on a final judgment rendered by a court of competent jurisdiction in Oklahoma. For reasons described more fully below, the court grants summary

judgment in favor of Claimant, overruling Richard Morgan's claim objection on the basis that it is indeed barred by the doctrines of *res judicata* and *Rooker-Feldman*. All other relief is denied.

### Undisputed Facts

1. Richard Morgan ("Morgan" or the "Debtor") filed his voluntary chapter 7 petition in bankruptcy on May 2, 2005.

2. Claimant timely filed a proof of claim in Morgan's case on December 30, 2005, which was designated as Claim No. 3 in the Bankruptcy Clerk's Claims Register. In Proof of Claim No. 3, Claimant asserts a general unsecured claim against Debtor in the total amount of $2,854,012.82, based upon:

(a) A "Journal Entry of Judgment" dated July 16, 2004, obtained by ORIX Real Estate Equities, Inc. ("ORIX"), an apparent predecessor in interest to the Claimant, in a matter styled *ORIX Real Estate Equities, Inc. v. Bordeaux III, L.L.C., et al.*, Case No. CJ-2003-9945, filed in the District Court of Oklahoma County, Oklahoma ("Oklahoma State Court"), which judgment declared Bordeaux III, L.L.C. ("Bordeaux III") and Morgan to be in default under a certain promissory note ("Note") and guaranty ("Guaranty"), respectively, and to be jointly and severally liable for the indebtedness under the Note and Guaranty, respectively, in the amount of $7,175,253.92, plus post-judgment interest; the judgment also ordered the liens of ORIX upon certain real property ("Property") securing the indebtedness to

2

be foreclosed and the Property sold (the "OK Foreclosure Judgment"). The OK Foreclosure Judgment reflects participation in the matter before the Oklahoma State Court by counsel for Morgan, through the filing of an appearance (Apx. No. 12),[1] an answer opposing relief (Apx. No. 13), and, in fact, counsel for Morgan "Approved" the form of judgment with his signature thereon (Apx. No. 15, p. 296).

(b) A subsequent "Order Awarding Deficiency Judgment," dated October 15, 2004, issued by the Oklahoma State Court, after the foreclosure sale of the Property, which order awarded to 8400 Expressway a deficiency judgment against Bordeaux III (*but not also against Morgan*) in the amount of $2,717,752.82, plus post-judgment interest (the "OK Deficiency Order"). The OK Deficiency Order also found "that in connection with the sale of the Property, ORIX has assigned all its interest under its judgments herein, its bid, and the note, mortgage and instruments executed in connection therewith, including but not limited to the Guaranty of Richard D. Morgan, to 8400 N.W. Expressway, L.L.C." (Apx. No. 23).

(c) An order dated February 10, 2005, issued by the District Court of Collin County, Texas, 416th Judicial District (the "Texas State Court Order"), domesticating to the State of

---

[1] References are to Claimant's Appendix submitted in support of its Motion for Summary Judgment.

3

Texas the OK Deficiency Order, finding that it is entitled to full faith and credit in Texas pursuant to the Uniform Enforcement of Foreign Judgments Act and TEX. CIV. PRAC. & REM. CODE § 35.01 *et seq*. Notably, the Texas State Court Order also provided that 8400 Expressway "has a judgment against [Bordeaux III] *and Richard D. Morgan* for $2,717,752,82 plus post-judgment interest accruing as of October 15, 2004" (emphasis added), even though the OK Deficiency Order, by its terms (and in contrast to the OK Foreclosure Judgment), only recites a judgment against Bordeaux III. (Apx. No. 27).

3. On September 17, 2006, Debtor filed his Objection to Proof of Claim No. 3, and on September 18, 2006, the Debtor filed Debtor's Supplement to Objection to Proof of Claim No. 3 (collectively, the "Claim Objection"). In the Claim Objection, the Debtor makes three basic arguments against allowance of Claimant's Proof of Claim: (i) there is nothing in the documentation attached to the proof of claim (the OK Foreclosure Judgment, the OK Deficiency Order, and the Texas State Court Order) that identifies 8400 Expressway as the true claimant; (ii) while the OK Foreclosure Judgment granted judgment against Bordeaux III and Morgan, the OK Deficiency Order was obtained against Bordeaux III only and *not Morgan*; Morgan asserts that the OK Deficiency Order replaces and supersedes the OK Foreclosure Judgment; (iii) the loan from ORIX to Bordeaux III was, from its

4

inception, intended by the parties to be a non-recourse debt as to Morgan, and Morgan was to have no personal liability on the debt except in certain limited circumstances in which Bordeaux III or Morgan engaged in certain bad acts.

4. The Claimant filed a Response to Debtor's Claim Objection on October 17, 2006. In its Response, Claimant sets forth four grounds upon which this court should overrule the Claim Objection: (a) Morgan, as a chapter 7 debtor, lacks standing to object to Claimant's claim; (b) the Debtor's challenge to the substance of Claimant's claim is barred by the *Rooker-Feldman* doctrine; (c) the Debtor's challenge to Claimant's claim is barred by the federal full faith and credit statute; and (d) the Debtor has misapplied Oklahoma state law with regard to the OK Foreclosure Judgment and the OK Deficiency Order.

5. On or about July 13, 2007, Claimant filed its Motion for Summary Judgment which was argued before this court on August 15, 2007. An Appendix attached hereto gives a more detailed recital of the undisputed facts presented at the Summary Judgment hearing—in particular regarding the record in the Oklahoma State Court prior to and after entry of the OK Foreclosure Judgment and OK Deficiency Order.

5

<u>Conclusions of Law and Ruling</u>

## I.  Summary Judgment Standard

Summary judgment is appropriate when the movant has established that the pleadings, affidavits, and other evidence available to the court demonstrate that no genuine issue of material fact exists, and the movant is, thus, entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006); *Lockett v. Wal-Mart Stores, Inc.*, 337 F.Supp.2d 887, 891 (E.D. Tex. 2004).  The court must view all evidence in a light most favorable to the non-moving party. *Piazza's Seafood World, LLC,* 448 F.3d at 752; *Lockett,* 337 F.Supp.2d at 891.  Factual controversies must be resolved in favor of the non-movant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  The court will not, "*in the absence of proof, assume that the nonmoving party could or would prove the necessary facts.*" *Id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)); *see also TIG Ins. Co. v. Eagle, Inc.*, Civ. Action No. 05-0179, 2007 U.S. Dist. LEXIS 19550, 2007 WL 861153, at *2 (E.D. La. 2007) (quoting *Little,* 37 F.3d at 1075).  Thus, once it is shown that a genuine issue of material fact does not

6

exist, "[s]ummary judgment is appropriate . . . if the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Arbaugh v. Y&H Corp.*, 380 F.3d 219, 222-23 (5th Cir. 2004), *reversed and remanded on other grounds*, 546 U.S. 500 (2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In the case at bar, there are no material facts in dispute at all. Based on the undisputed facts: (a) Claimant is not entitled to summary judgment *dismissing* the Claim Objection on the basis of lack of standing of the Debtor/Morgan to pursue a claim objection; but (b) Claimant is indeed entitled to summary judgment *overruling* the Claim Objection based on the *res judicata* and *Rooker-Feldman* doctrines.

## II. Standing of the Debtor to Pursue the Claim Objection

The court concludes, based on the undisputed facts, that the Debtor does, indeed, have standing to pursue the Claim Objection. The court turns first to the Bankruptcy Code's language at section 502(a), that must reasonably be interpreted to mean that any "party in interest" in a case has standing to object to a proof of claim. Section 502(a) provides that a claim, proof of which is filed under section 501, is deemed allowed "unless a party in interest . . . objects." 11 U.S.C. § 502(a). Despite this language, as a practical matter, objections to claims in chapter 7 cases are typically pursued by the chapter 7 trustee,

7

because of section 704(a)(5), which sets forth the statutory duties of a chapter 7 trustee, and provides that the trustee in a chapter 7 case shall, "if a purpose would be served, examine proofs of claim and object to the allowance of any claim that is improper." 11 U.S.C. § 704(a)(5).  Because of section 704(a)(5), certain courts have prohibited parties other than a trustee from pursuing claim objections.  Certain courts have also questioned whether a chapter 7 debtor has or should be allowed standing to pursue a claim objection.  Indeed, the latter inquiry makes sense because "party in interest," as used in section 502(a), implies that a party objecting to a claim must have some "interest" in the outcome of the dispute.  In the majority of chapter 7 cases, a chapter 7 debtor will have no identifiable interest in the outcome of claim objections.

Courts have generally articulated two situations in which a debtor should be considered to have standing to pursue a claim objection.  First, if the debtor has some pecuniary interest in the outcome of the claim objection, such as "[i]f there might be a surplus in non-exempt assets which would be returned to the debtor after creditors were paid in full, then the chapter 7 debtor has a pecuniary interest in the outcome of any claim objection." *In re Toms*, 229 B.R. 646, 650 (Bankr. E.D. Pa. 1999). *See also In re Cult of Awareness Network, Inc.*, 151 F.3d 605, 608 (7th Cir. 1998).  Second, if the chapter 7 trustee has

8

refused to pursue a claim objection without justification or, similarly, where no trustee has been appointed. *Caserta v. Tobin*, 175 B.R. 773, 775 (S.D. Fla. 1994). *See also In re Choquette*, 290 B.R. 183, 189-90 (Bankr. D. Mass. 2003).

8400 Expressway argues that because Morgan's schedules show debts many millions of dollars more than the assets listed in the schedules (Apx. No. 7), and because the claims register shows over $12 million in filed claims against the Debtor (Apx. No. 3), that this case is a no-asset case in which the Debtor will not ever realize a return of assets. While this is a reasonable argument, it is also worthy to note that, at the conclusion of Morgan's section 341 first meeting of creditors, the trustee filed a report with this court concluding that there are assets in this case to administer and a proof of claim bar date was set (the court has taken judicial notice of same). Too, the trustee has employed counsel and an accounting firm to assist him in the administration of the estate including investigation of the assets of the Debtor. So it is not apparent that this case is a no-asset case, as 8400 Expressway suggests. The Debtor makes the further argument that he has a pecuniary interest in the outcome of this Claim Objection because 8400 Expressway has objected to his discharge, and though the bankruptcy court has ruled in the Debtor's favor on this after a five-day trial, 8400 Expressway has appealed the bankruptcy court's ruling. The Debtor argues

9

that if 8400 Expressway is successful on appeal, and the Debtor's discharge is ultimately denied, then that will mean that all of his debts will come back to him (creating a pecuniary interest in the size of the claims). On the other hand, if the Debtor is able to eliminate 8400 Expressway as a creditor, then it will no longer have standing to pursue the discharge objection appeal[2] and the Debtor will be better off financially.

The court agrees with the Debtor that he has a potential pecuniary and otherwise colorable interests in the outcome of the Claim Objection based upon: (a) the amount of assets and claims still being very uncertain; and (b) the ultimate outcome of the discharge litigation/appeals being uncertain.

### III. The Debtor's Challenge to the Substance of Claimant's Claim is Barred by the Doctrines of *Rooker-Feldman* and *Res Judicata.*

The court concludes, based on the undisputed facts, that Morgan's challenge to the substance of 8400 Expressway's claim is indeed barred by the doctrine of *Rooker-Feldman* and through the application of the doctrine of *res judicata,* as required by the full and credit statute, 28 U.S.C. § 1738 (requiring federal courts to "give state court judgments the same preclusive effect that they would enjoy in the courts of the rendering state.").

---

[2] The court notes that a party, including the Trustee, could certainly move to intervene in the discharge litigation/appeal, in such a circumstance.

10

*Ingalls v. Erlewine (In re Erlewine)*, 349 F.3d 205, 210 (5th Cir. 2003).

### A. *Rooker-Feldman* Doctrine and *Res Judicata* Principles

The so-called *Rooker-Feldman*[3] doctrine is implicated in "cases brought by state-court losers complaining of injuries cause by state court judgments rendered before the [federal] proceedings commenced and inviting [federal] review and rejection of those judgments." *Lance v. Dennis*, 126 S. Ct. 1198, 1201 (2006). The doctrine holds that federal district courts simply lack jurisdiction to entertain collateral attacks on state judgments.

> A federal complainant cannot circumvent this jurisdictional limitation by asserting claims not raised in the state court proceedings or claims framed as original claims for relief. If the district court is confronted with issues that are 'inextricably intertwined' with a state judgment, the court is 'in essence being called upon to review the state-court decision,' and the originality of the district court's jurisdiction precludes such a review.

*United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994). Indeed, this court, like a district court, does not have the jurisdiction or the power to entertain attacks on state court judgments per the *Rooker-Feldman* doctrine. *In re Wilson*, 116 F.3d 87, 90 (3rd Cir. 1997) ("The bankruptcy court is [] prohibited from reviewing the state court's judgment by the

---

[3] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Circuit Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

11

*Rooker-Feldman* doctrine, which prohibits lower federal courts from sitting as effective courts of appeal for state court judgments."). No inferior federal court has the power to modify, nullify, or reverse state court judgments. *Union Planters Bank, N.A. v. Salih*, 369 F.3d 457, 462 (5th Cir. 2004). "If a state trial court errs the judgment is not void, it is to be reviewed and corrected by the appropriate state appellate court. Thereafter, recourse at the federal level is limited solely to an application for a writ of certiorari to the United States Supreme Court." *Liedtke v. State Bar of Texas*, 18 F.3d 315, 317 (5th Cir. 1994); *see also Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000); *Union Planters Bank, N.A. v. Salih*, 369 F.3d at 462. "[T]he inferior federal courts lack jurisdiction to exercise appellate review over state court decisions." *In re Erlewine*, 349 F.3d 205, 209 (5th Cir. 2003).

Claimant's claim is based on a final judgment (*i.e.*, the OK Foreclosure Judgment) rendered by a court of competent jurisdiction in Oklahoma. The record clearly shows that ORIX, Claimant's purported predecessor, sought a personal judgment against Bordeaux III *and Morgan* in its petition filed in Oklahoma State Court, for the total amounts due under the Note and Guaranty, not merely *in rem* relief as to the underlying real property. (Apx. No. 11). Indeed the OK Foreclosure Judgment granted the following relief: (a) money judgment in favor of

12

ORIX on the Note against Bordeaux III and on the Guaranty against Morgan in the amount $7,175,253.92, plus interest accruing after July 16, 2004; and (b) sale of the underlying property securing the Note by the Sheriff. No appeal of the OK Foreclosure Judgment was taken. The record is undisputed that Morgan was served with ORIX's petition, that Morgan filed an answer alleging that his Guaranty was nonrecourse and disputing *in personam* liability on the Guaranty (Apx. No. 13), and that Morgan never appealed the OK Foreclosure Judgment. Pursuant to Oklahoma law, a "judgment rendered by a court of competent jurisdiction on the merits is a bar to any future suit between the same parties or their privies on the same cause of action so long as the judgment remains unreversed." *Heinhold Hog Market, Inc. v. McCoy*, 817 F.2d 81, 82 (10th Cir. 1987). The doctrine of *res judicata* provides that a "judgment in an action bars the parties (or their privies) from relitigating not only the adjudicated claim, but also any theories or issues that were actually decided *together with those which could have been decided in that action.*" *McDoneld v. Lynn Hickey Dodge, Inc.*, 979 P.2d 252, 255-56 (Okla. 1999). Again, the OK Foreclosure Judgment was never appealed. It is a final judgment on the merits to which this court must give full faith and credit.

13

### B.  Morgan's Ill-Reasoned Argument that there is No Longer a Judgment that Applies to Him.

Morgan nevertheless argues that no claim can be pursued against him now because:  (a) the OK Foreclosure Judgment was superseded and replaced, on October 15, 2004, by the OK Deficiency Order; (b) the OK Deficiency Order did not impose a deficiency claim upon Morgan personally—it only imposed a deficiency claim against Bordeaux III; and (c) Claimant's failure to obtain a deficiency judgment against Morgan personally within 90 days after the foreclosure sale results in any deficiency claim against Morgan having been discharged by operation of law, citing Okla. Stat. tit. 12 § 686 (West 2006) and *Apache Lanes, Inc. v. Nat'l Educators Life Ins. Co.*, 529 P.2d 984 (Okla. 1974). In other words, Morgan argues that there simply is no longer a final judgment that applies to him.  Moreover, Morgan argues that if Claimant's claim was not discharged by operation of law, by Claimant's failure to obtain a deficiency judgment against Morgan individually, then the language of the Guaranty supports an argument that Morgan has no personal liability to Claimant or ORIX, under the facts of this case.

Morgan incorrectly argues Oklahoma law, which clearly contradicts any notion that (a) the OK Deficiency Order supersedes or replaces the original OK Foreclosure Judgment, or (b) the Guaranty can no longer be enforced because of the failure

14

of ORIX to obtain a deficiency judgment against Morgan within 90 days of the foreclosure sale.

First, there is absolutely no support for the notion that a "deficiency judgment" supersedes or replaces a foreclosure judgment. The Oklahoma Supreme Court has held that there can be only one "judgment" or one final judicial determination upon a single cause of action, and, in the context of a foreclosure proceeding, this one "judgment" is *the order determining the amount due and ordering the foreclosure sale to satisfy the mortgage lien*. *FDIC v. Tidwell,* 820 P.2d 1338, 1341 (Okla. 1991) (citations omitted). The deficiency "judgment" that is often rendered thereafter is simply considered a post-judgment supplemental order, under Oklahoma law, that allows the judgment creditor to obtain a writ of general execution to satisfy the deficiency amount from the mortgagor. *E.g., Tidwell*, 820 P.2d at 1341; *Mehojah v. Moore*, 744 P.2d 222, 225 (Okla. Civ. App. 1987). In order to appeal errors in a judgment of foreclosure, it is necessary to appeal from the foreclosure judgment. *Tidwell*, 820 P.2d at 1341. Thus, the only thing to legitimately examine here is, was the OK Foreclosure Judgment rendered after full adjudication of the amounts due and all defenses and interrelated counterclaims properly raised by the defendants? If so, this means the issue of liability under the Guaranty was finally adjudicated. *Id.* The answer is yes. The OK Foreclosure

15

Judgment was rendered after the filing of a petition by ORIX
seeking, among other things, the adjudication of amounts owing
under both the Note and the Guaranty, and after the filing of an
answer by Morgan contesting his liability under the Guaranty. To
be absolutely clear, the petition filed by ORIX did not simply
ask for the *in rem* relief of foreclosure; it sought *in personam*
liability against Bordeaux III (under the Note) and Morgan (under
the Guaranty). The petition specified how it was that the
limited-recourse Guaranty had been triggered, so that full
recourse might be sought against Morgan ("due to the existence of
encumbrances on the Property prohibited under the Note . . .").
(Apx. No. 11, pp. 83-85, ¶¶ 24; 26-29.) Morgan disputed that
recourse could be sought against him in his answer. (Apx. No.
13, p. 260, ¶ 6.) ORIX filed a motion for summary judgment
presenting summary judgment evidence that the events triggering
recourse against Morgan under the Guaranty had occurred. (Apx.
No. 14; pp. 258-69.) The OK Foreclosure Judgment—which Morgan's
counsel signed off on and never appealed nor sought modification
of—constitutes a final determination of the amounts due under the
Guaranty and the related Note.

Additionally, there is no support for the argument espoused
by Morgan that the Guaranty can no longer be enforced because of
the failure of ORIX to obtain a deficiency judgment against
Morgan within 90 days of the foreclosure sale (citing Okla. Stat.

16

tit. 12, § 686 (West 2006) and *Apache Lanes, Inc.* v. *Nat'l Educators Life Ins. Co.*, 529 P.2d 984 (Okla. 1974)).  The Oklahoma statute cited by Morgan, at first blush, appears somewhat troubling.  It provides:

> Simultaneously with the making of a motion for an order confirming the sale or in any event *within ninety (90) days after the date of the sale*, the party to whom such residue shall be owing may make a motion in the action for leave to enter a deficiency judgment upon notice to the party against whom such judgment is sought or the attorney who shall have appeared for such party in such action.  Such deficiency judgment shall be for an amount equal to the sum of the amount owing by the party liable as determined by the judgment with interest, plus costs and disbursements of the action plus the amount owing on all prior liens and encumbrances with interest, less the market value as determined by the court or the sale price of the property whichever shall be the higher. *If no motion for a deficiency judgment shall be made as herein prescribed the proceeds of the sale regardless of amount shall be deemed to be in full satisfaction of the mortgage debt and no right to recover any deficiency in any action or proceeding shall exist.*

Okla. Stat. tit. 12, § 686 (West 2006) (emphasis added) [hereinafter "Section 686"].

Courts have interpreted Section 686 to mean that "[u]nless a deficiency judgment is sought, the lender is confined to the sale of the mortgaged property for the satisfaction of the mortgage obligation.  A "deficiency judgment is a *postjudgment* prerequisite for the issuance of a general execution to enforce the unpaid balance due on the mortgage." *Willis* v. *Nowata Land and Cattle Co., Inc.*, 789 P.2d 1282, 1285 n.11 (Okla. 1989).  But does Section 686 apply to guarantors, or only to mortgagors?

17

With regard to the applicability of Section 686 to guarantors, the Oklahoma Supreme Court has noted that mortgage debtors—as opposed to guarantors—are the "principal beneficiaries" of this statute, because mortgage debtors cannot contract away the statute's benefits but guarantors may and frequently do relinquish or waive the benefits of Section 686. *Founders Bank & Trust Co. v. Upsher*, 830 P.2d 1355, 1359 (Okla. 1992). A guarantor's obligation for a debt depends upon the terms of the guarantee agreement and the guarantor's liability may survive, even where the creditor omits to seek a deficiency judgment against the principal debtor. *See Riverside Nat. Bank v. Manolakis*, 613 P.2d 438 (Okla. 1980). The Oklahoma Supreme Court "absolutely [rejected] the notion that the benefits of a [section] 686 discharge automatically avail to a guarantor." *Id.* at 440.

The *Riverside* case involved an appeal of a district court judgment entered in a suit by a bank against a guarantor to collect on a guaranty after a foreclosure sale had occurred. The bank had not pursued a deficiency judgment from the obligor on the principal indebtedness (much less the guarantor) within 90 days after the foreclosure sale. In the action, the guarantor moved for summary judgment, claiming that both the mortgage indebtedness as well as the guarantor's obligation became satisfied by operation of Section 686 when the bank failed,

18

within 90 days of the foreclosure sale, to seek deficiency
judgment against the principal debtor. The trial court had ruled
in guarantor's favor on this. On appeal, the Oklahoma Supreme
Court reversed and remanded. The court ruled that Oklahoma has
"Field Code provisions" that regulate guaranty and surety
relationships. Okla. Stat. tit. 15, §§ 321-344 & 371-385 (West
2006). The court held "we absolutely reject the notion that the
benefits of a Section 686 discharge automatically avail to a
guarantor." *Riverside,* 613 P.2d at 440. The inquiry in each
case must focus on the precise terms of the guarantor's
undertaking. Among other things, the running of the statute of
limitations on the principal debt does not operate to bar an
action against the debtor's guarantor.

> We hold that the effect of [Section] 686 as construed in
> *Apache* may be avoided by an agreement which allows the
> guarantor's liability to survive regardless of the
> creditor's omission to seek deficiency judgment against the
> principal debtor. What defenses remain available to a
> guarantor under [Section] 344, upon creditor's failure to
> seek a deficiency judgment, must be determined by the terms
> of the guaranty contract . . . In the case before us the
> guarantor, by the clear provisions of his promise, expressly
> waived all of the available s 344 defenses.

*Id.* at 439. In summary, *Riverside* held that:

> Our anti-deficiency statute, [Section] 686, addresses itself
> exclusively to the creditor/debtor relationship. It does
> not deal with the more complex, tripartite relationship of
> guarantor/debtor/creditor or with the rights under the
> guaranty agreement. The obligations in the latter category
> are regulated by the distinctly unrelated and separate
> provisions of 15 O.S. 1971 §§ 321-344. Although a
> creditor's failure to seek a deficiency recovery may impair
> a guarantor's right to proceed against a principal debtor,

> it does not follow that a guarantor is automatically
> discharged in every case.  That must, of course, depend on
> the nature of the guarantor's undertaking.  . . .In short,
> the protection of [Section] 686 applies only to debtors.  It
> does not make illegal those contracts that allow the
> guarantor's liability to survive [Section] 686 discharge nor
> can it, per se, operate to exonerate the guarantor from
> liability on an obligation deemed 'satisfied' by that
> section.

*Id.* at 441.

The Oklahoma Supreme Court further opined in the *Upsher* case

that "Oklahoma's guaranty jurisprudence is well established.  'A

guaranty is a promise to answer for the debt, default or

miscarriage of another person.'  *Upsher,* 830 P.2d at 1361

(citations omitted).  The guarantor's obligation is *collateral* to

that of the principal debtor or obligor and *independently* and

*separately enforceable."  Id.*  "A guaranty is to be *construed in*

*favor of one who has parted with property* in *reliance* on the

*collateral promisor." Id.* at 1362.  The *Upsher* case involved a

guaranty agreement that contained a waiver of the requirement in

Section 686 that the lender, in calculating any deficiency after

foreclosure, give credit against the indebtedness for the fair

market value of the property sold in foreclosure (as opposed to

merely giving credit for the actual sale proceeds obtained in the

foreclosure, which would have been a smaller credit).  The court

noted that lenders often feel compelled to protect a loan's

soundness by obtaining guaranty agreements from guarantors that

often waive certain of the provisions/protections of Section 686.

20

The court quoted its earlier opinion in *Riverside* which discussed that the anti-deficiency statute of Section 686 "deals solely with the creditor/debtor relationship and does not govern the more complex, tripartite relationship of guarantor/debtor/creditor" or rights under a guaranty agreement. The *Upsher* court unequivocally expressed that Section 686 does not apply to guaranty agreements.

In summary, under Oklahoma law, the fact that Claimant (or its predecessor) did not seek a deficiency judgment against Morgan, as guarantor, appears to be irrelevant. Section 686 clearly required ORIX to pursue a deficiency claim against Bordeaux, the mortgagor, within 90 days of the foreclosure sale, in order for ORIX to pursue any remaining indebtedness against *Bordeaux*. But, as to a guarantor, there is no requirement that a deficiency judgment be obtained as a prerequisite to pursuing general collection of unpaid amounts. One simply looks to the form of the guaranty for the rights and remedies of the parties with regard to pursuing the liability thereunder. The court notes that the Guaranty of Morgan is replete with waivers—"Guarantor irrevocably waives . . . (v) diligence in collection . . . upon any obligation hereunder, . . . and any and all formalities that otherwise might be legally required to charge Guarantor with liability, . . . (vii) the defense of any statute of limitations affecting the liability of Guarantor

hereunder or the enforcement thereof, to the extent permitted by law . . . (xiii) any defense arising by reason of any act or failure to act by Lender, election of remedies made by Lender," (Apx. No. 11, pp. 227-228, ¶ 5), and "No delay on the part of the Lender in the exercise of any right or remedy shall operate as a waiver thereof . . .") (Apx. No. 11, pp. 228, ¶ 6).  There is nothing under Oklahoma law or the unambiguous terms of the Guaranty that suggests that ORIX/Claimant is barred from pursuing its remaining claims against Morgan.  The court does note that, since no post-foreclosure litigation has ever occurred in the Oklahoma State Court against Morgan directly with regard to the residue liability against him, Morgan technically may have entered this bankruptcy case with the ability to pursue any legitimate post-foreclosure credits against his liability (if any there be; none have been urged here).[4]  *See Willis v. Nowata Land*

---

[4] The court notes that it considers the litigation in the Texas State Court basically irrelevant in this regard.  This litigation was simply about having the Oklahoma judgments/orders (*i.e.*, foreign judgments) domesticated and treated in the same way as a Texas judgment.  It appears that no actual litigation occurred dispositive of the size of Claimant's deficiency claim against Morgan in the Texas State Court.  The fact that the Texas State Court erroneously stated that the OK Deficiency Order imposed $2,717,752.82 of liability upon Morgan is, in this court's view, irrelevant and of no *res judicata* effect.  *See Myers v. Ribble*, 796 S.W.2d 222, 224-25 (Tex. App. – Dallas 1990) (a domestication order converts a foreign judgment into a Texas judgment of exactly the same character).  *See also* TEX. CIV. PRAC. & REM. CODE § 35.003(c) ("[a] filed foreign judgment has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, staying, enforcing, or satisfying a judgment as a judgment of the court in which it is filed").  In other

*and Cattle Co., Inc.*, 789 P.2d 1282 (Okla. 1989) (discussing permissible post-confirmation/post-foreclosure litigation; the fact that it is limited to those issues that arose after the sale and confirmation; and noting that it typically falls into three categories: (1) exact amount of deficiency; (2) claim to post-sale surplus in the hands of a clerk; (3) any other credit that might be sought on the amount of the lender's judgment for the unpaid balance on the indebtedness). But, in any event, post-foreclosure litigation in this context *could not have extended beyond issues that arose after the sale and confirmation of the sale by the Oklahoma State Court*. The fact is, Morgan did not allege any credits or offsets in his Claim Objection. Rather, Morgan simply rehashed an argument he raised in the Oklahoma State Court regarding the nonrecourse nature of the Guaranty. This is "too little too late." This is not a permissible post-foreclosure issue such as those referred to in *Willis*. This court is barred from considering such a defense because of the doctrine of *res judicata*.

C.  Morgan's Arguments About Claimant not being the True Holder of ORIX's Claims.

Finally, Morgan has argued that there is nothing in the documentation attached to the proof of claim (the OK Foreclosure

words, a domestication order does not cure whatever deficiencies or change the character in any way of the foreign judgment that is being domesticated.

23

Judgment, the OK Deficiency Order, and the Texas State Court Order) that identifies 8400 Expressway as the true claimant, with regard to Proof of Claim No. 3.  This argument is specious. There is no genuine issue as to any material fact here.  No other party (not ORIX, not anyone) has asserted the claim against Morgan based on the Guaranty in this case.  Morgan himself listed 8400 Expressway in his Bankruptcy Schedule F as the holder of the claim based on the Guaranty.  (Apx. No. 7, p. 40.)  Most importantly, in an Order Confirming Sheriff's Sale, entered by the Oklahoma State Court in the same action in which the OK Foreclosure Judgment was issued, which order was issued after the filing of a Motion to Confirm Sheriff's Sale, which was served September 14, 2004 on Morgan's (and Bordeaux's) counsel, the Oklahoma State Court specifically found that the interests of ORIX with regard to the Note and Guaranty had been "assigned" to 8400 Expressway.  (Apx. No. 20 & Apx. No. 21, p.328.)  Thus, this court is once again bound under the doctrine of *res judicata* from disturbing or reexploring this finding.

CONCLUSION

In summary:  (a) Morgan has standing to pursue his Claim Objection, thus the Claim Objection is not entitled to dismissal as a matter of law; however, (b) Morgan's Claim Objection must be overruled as a matter of law because Oklahoma law does **not** support the notion (i) that the OK Foreclosure Judgment was

24

superseded and replaced by the OK Deficiency Order, nor (ii) that
Claimant's failure to obtain a deficiency judgment against Morgan
personally within 90 days after the foreclosure sale resulted in
any deficiency claim against Morgan having been discharged by
operation of law.  Moreover, Morgan's argument that the language
of the Guaranty supports an argument that Morgan has no *in
personam* liability to Claimant or ORIX, under the facts of this
case, is too little too late:  the issue was fully litigated
and/or subject to full litigation in the Oklahoma State Court and
this court cannot now consider this issue.  Finally, Morgan's
argument that 8400 Expressway is not the true claimant with
regard to Proof of Claim No. 3 is overruled as a matter of law,
for the reasons stated above.

ORDER

Based on the foregoing, it is hereby

**ORDERED** that summary judgment is **DENIED** with regard to 8400
N.W. Expressway, L.L.C.'s claim that the Claim Objection should
be dismissed for lack of standing of the Debtor.  It is further

**ORDERED** that summary judgment is **GRANTED** with regard to 8400
N.W. Expressway, L.L.C.'s claim that the Claim Objection should
be overruled under the doctrines of *res judicata* and *Rooker-
Feldman*, since Proof of Claim No. 3 filed by 8400 N.W.
Expressway, L.L.C. is based on a final, nonappealable judgment
(*i.e.*, the OK Foreclosure Judgment) rendered by a court of

25

competent jurisdiction in Oklahoma. It is further

ORDERED that all matters raised in the Claim Objection are herein disposed of, since Morgan's argument in the Claim Objection, that 8400 N.W. Expressway, L.L.C. is not the true claimant with regard to Proof of Claim No. 3, is likewise precluded under the doctrines of *res judicata* and *Rooker-Feldman* (in that 8400 N.W. Expressway, L.L.C.'s holder status was determined in a final and nonappealable order rendered by a court of competent jurisdiction in Oklahoma—*i.e.,* the Order Confirming Sheriff's Sale, Apx. No. 21, p. 328). It is further

ORDERED that N.W. Expressway, L.L.C. shall have an allowed unsecured claim in the Morgan bankruptcy case in the amount of $2,854,012.82.

Signed this ___6th___ day of September, 2007.

Stacey G. C. Jernigan
United States Bankruptcy Judge

**Appendix to Memorandum Opinion and Order Granting Summary Judgment in Favor of 8400 N.W. Expressway, LLC on Objection to its Proof of Claim—Timeline of Undisputed Facts**

| | |
|---|---|
| 10/8/1999 | Bordeaux III, LLC ("Bordeaux III"), a Texas limited liability company, and ORIX USA Corporation entered into a note and security agreement, under which Bordeaux III borrowed $7,750,000 ("Note"), which was secured by certain real property located in Oklahoma ("Property"). Richard Morgan also signed a Guaranty, in which he guaranteed obligations of Bordeaux III under the Note in certain events. (Apx. No. 11, pp. 91-256) |
| 11/26/2003 | ORIX Real Estate Equities sued Morgan, Bordeaux III, and others in Oklahoma State Court, alleging default under the Note, seeking *in personam* liability against Bordeaux and Morgan under the Note and Guaranty, respectively, and also seeking the remedy of foreclosure with regard to the Property. ORIX's cause of action against Morgan was based on his Guaranty, asserting that Morgan was liable on all sums due under the Note, "due to the existence of encumbrances on the Property prohibited under the Note." (Apx. No. 11, pp. 83-86). Apparently, the Morgan Guaranty was a limited recourse guaranty, but certain events obligated Morgan to pay the full indebtedness under the Note, including the occurrence of "a transfer, sale or encumbrance of the Property not authorized by Lender." (Apx. No. 11; p. 222) |

| | |
|---|---|
| 3/11/2004 | Morgan answered the Oklahoma State Court suit, alleging, among other things, that the Guaranty was a nonrecourse obligation and the conditions for claiming recourse and *in personam* liability against him had not been satisfied. (Apx. No. 13; p. 260, ¶ 6) |
| 6/4/2004 | ORIX filed a motion for summary judgment in Oklahoma State Court and served it on Morgan's counsel, arguing and presenting summary judgment evidence that there had been unauthorized encumbrances or transfers with regard to the Property and that Morgan's full recourse under the Guaranty had been triggered. (Apx. No. 14, pp. 268-69) |
| 7/16/2004 | Oklahoma State Court entered a judgment styled "Journal Entry of Judgment" (the "OK Foreclosure Judgment") in favor of ORIX against Morgan and Bordeaux III in the amount of $7,175,253.92. (Apx. No. 15) Specifically, it provided: "The Court further finds, and it is hereby ORDERED, ADJUDGED AND DECREED, that ORIX is granted judgment on the Promissory Note against BORDEAUX III, LLC, a Texas limited liability company, and on the Guaranty against RICHARD D. MORGAN in the amount . . . of $7,175,253.92, plus interest accruing on and after the date hereof . . . ." On page 6, the court also ordered that the Sheriff should sell the Property. No appeal of the OK Foreclosure Judgment was taken. |
| 7/19/2004 | A Writ of Special Execution and Order of Sale in Foreclosure directing sheriff's sale of Property was entered. (Apx. No. 17) |

| | |
|---|---|
| 9/9/2004 | Sheriff's sale occurred netting $3.4 million for ORIX. (Apx. No. 18) |
| 9/14/2004 | ORIX filed a motion for deficiency judgment in Oklahoma State Court and served it on Morgan's counsel. (Apx. No. 19) ORIX also filed a motion to confirm sheriff's sale and also served that on Morgan's counsel. (Apx. No. 20) |
| 10/4/2004 | Oklahoma State Court granted order confirming sheriff's sale. (Apx. No. 21) |
| 10/6/2004 | Sheriff signed Sheriff's Deed to 8400 Expressway, apparent assignee of ORIX (see below), and that deed was recorded in Oklahoma County, Oklahoma. (Apx. No. 22) |
| 10/15/2004 | Oklahoma State Court entered Order Awarding Deficiency Judgment (the "OK Deficiency Order") against Bordeaux III, reducing its liability to $2,717,752.82 plus post-judgment interest. The OK Deficiency Order reflected that ORIX had assigned its interest in the OK Foreclosure Judgment to 8400 Expressway. The OK Deficiency Order ordered that 8400 Expressway has a deficiency judgment against *Bordeaux III*. It did not provide that 8400 Expressway had a deficiency judgment against *Morgan* but it did, a paragraph earlier, note that 8400 Expressway has been assigned all of ORIX's interests "under its judgment herein, its bid, and the note, mortgage and instruments executed in connection therewith, including but not limited to the Guaranty of Richard D. Morgan." (Apx. No. 23). No appeal of the deficiency order was taken. |

| | |
|---|---|
| 12/1/2004 | 8400 Expressway filed copies of the OK Foreclosure Judgment and the OK Deficiency Order in Collin County District Court in Texas, in order to domesticate them. (Apx. No. 24) |
| 2/10/2005 | Collin County District Court entered order domesticating foreign judgment (the "Domestication Order"), finding that "judgment styled ORIX Real Estate Equities, Inc. v. Bordeaux III, LLC et al. rendered in the District Court of Oklahoma County, State of Oklahoma on October 15, 2004 is entitled to full faith and credit in Texas." The Domestication Order also provided that the clerk of the court "shall treat the aforementioned foreign judgment in the same manner as a judgment of this Court." It also ordered that "8400 has a judgment against Bordeaux III, LLC and Richard D. Morgan for $2,717,752.82 plus post-judgment interest . . . ." |
| 5/2/2005 | Morgan filed his voluntary Chapter 7 petition. |